[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In a Motion for Contempt dated September 7, 1994, the plaintiff alleges the following. On January 17, 1984, Judgement for dissolution of the marriage of the parties was entered in the above-entitled action. By terms of the Judgement, the defendant husband was ordered to contribute the sum of one dollar for each one dollar actually expended by the plaintiff wife for the college education of the minor child, Kirstin J. Burnham, provided the child applies for any scholarships, financial aid or educational loans, but in no event more than fifty percent of the total cost of college expenses, including room and board, of a resident student of the University of Connecticut, which amount for 1994-1995 is $9,784.00.
The minor child, Kirstin J. Burnham, is now attending North Park College in Chicago, Illinois, the cost of which is $16,990.00 for the year, inclusive of tuition, fees, room and board, less financial assistance in the amount of $6,725.00 for a net cost of $10,265.00. To date, the defendant has refused to contribute any monies toward the educational expenses of the minor child, Kirstin J. Burnham, as was ordered by the Court.
The plaintiff requests that the court: (1) enter an order holding the defendant in contempt of the court order; and (2) award to the plaintiff the costs and reasonable attorney's fees for the bringing of this motion as allowed by law. The plaintiff filed a memorandum of law in support of her motion CT Page 6334 for contempt dated March 24, 1995.
On March 28, 1995, the defendant filed an objection to the plaintiff's motion for contempt. The defendant objects to the plaintiff's motion for the following reasons: (1) the defendant has substantially complied with the court's judgment in the dissolution of the parties' marriage dated February 17, 1984; (2) the plaintiff brings this motion with unclean hands, in that she is aware of the case law regarding post majority child support, yet, pursues this motion as a means of coercing the defendant into an unwanted settlement; (3) paragraph 3 of the plaintiff's Motion for Contempt falsely alleges the defendant has filed and refused to pay his share of college expenses for their daughter, in that he has offered to voluntarily contribute sums directly to Kirsten to help defray her expenses; and (4) as stated in defendants' objection, "despite the showing of clear precedent to the plaintiff and her counsel the plaintiff has pursued this frivolous contempt motion at great cost and expense to the defendant."
The defendant requests that the court deny the plaintiff's Motion for Contempt; order the plaintiff to pay costs and attorneys' fees in defending this action; and further deny all other requests for relief by the plaintiff.
In her memorandum in support of her Motion for Contempt, the plaintiff argues the following. The provisions of the Judgment were orally entered upon the record. Subsequent thereto the Court placed the defendant under oath and asked the defendant if he had heard the agreement, fully understood the agreement, his obligations thereunder, and would he like to have the court approve the agreement, to all of which the defendant responded "Yes". Thereafter, the Judgment file was prepared, which incorporated the terms and provisions of the stipulated agreement entered on the record, signed by the attorneys of record and filed with the Court. The plaintiff argues that since the terms and provisions of the oral agreement were incorporated and reduced to a writing by way of the Judgment File and signed by the parties' attorneys, the provisions of General Statutes § 46b-66 have been met as to the agreement being in writing.
Furthermore, the plaintiff argues that "even if the Court should conclude that the agreement was not in writing it is CT Page 6335 clear that the Defendant husband cannot belatedly contest subject matter jurisdiction when he was fully aware of the consequences of the decree and had an opportunity to fully litigate the questions of jurisdiction in the original action, when by stipulation he agreed without reservations to the terms of the order which he now challenges." The plaintiff contends that under these circumstances there exists no strong policy reasons for giving the defendant a second opportunity to challenge jurisdiction and the validity of the post-eighteen educational order.
Finally, the plaintiff contends that public policy, including the finality of judgments, precludes review of the defendant's claim especially since eleven years later he now claims that the orders exceeded the trial court's subject matter jurisdiction. The plaintiff argues that to disturb the Judgment would create an unjust situation and an injustice to the plaintiff.
Defendant response to these arguments is, first, that "[t]he Court did not possess jurisdiction to issue an order for post-majority support on the date of dissolution." The defendant further argues that absent a written agreement signed by the parties, the Court has no jurisdiction to make any orders for the support of a child who has reached the age of eighteen.
The defendant contends that "the arguments regarding the public policy and finality of judgments do not support the argument that this court should ignore the lack of the prior court's subject matter jurisdiction in its prior dissolution judgment." The defendant contends that he is within his rights to contest subject matter jurisdiction now. The defendant further contends that a collateral attack is allowed when it is apparent that the trial court did not have jurisdiction to enter the orders as it did.
Finally, the defendant contends that "[t]he order of the Court in the judgement file is not written agreement for purposes of Connecticut General Statutes Section 46b-66." The defendant argues that the plain meaning of General Statutes § 46b-66 would indicate that the agreement which is required to be in writing must exist prior to the court's order.
General Statutes § 46b-66 entitled Review of agreements;CT Page 6336incorporation into decree, provides, in pertinent part that:
 If the agreement is in writing and provides for the care, education, maintenance or support of a child beyond the age of eighteen, it may also be incorporated or otherwise made part of any such order and shall be enforceable to the same extent as any other provision of such order or decree . . . .
"General Statutes § 46b-66 requires agreements for the postmajority support of a child to be written. Mitchell v.Mitchell, 24 Conn. App. 343, 345, 588 A.2d 242 (1991). Compliance with General Statutes § 46b-66 is a jurisdictional prerequisite to the incorporation of an order for postmajority support into the Judgment for dissolution. Hirtle v. Hirtle,217 Conn. 394, 400, 586 A.2d 578 (1991).
"[U]nder the common law, a trial court has inherent authority to open and modify a judgment it rendered without jurisdiction. Such a judgment is void ab initio and is subject to both direct and collateral attack." Morris v.Irwin, 4 Conn. App. 431, 433, 494 A.2d 626 (1985). "If a court has never acquired jurisdiction over a defendant or the subject matter . . . any judgment ultimately entered is void and subject to vacation or collateral attack." Bartels v.International Commodities Corporation, 435 F. Sup. 865, 867
(D.Conn. 1977).
This traditional rule, however, has recently been modified, especially in dissolution cases by the realization that "even litigation about subject matter jurisdiction should take into account the importance of the principle of the finality of judgments, particularly when the parties have had a full opportunity originally to contest the jurisdiction of the adjudicating tribunal." Monroe v. Monroe, 177 Conn. 173,178, 413 A.2d 819. "[T]here are limits to the notion that subject matter jurisdictional defects may be raised at any time." Upjohn v. Zoning Board of Appeals, 224 Conn. 96, 103,616 A.2d 793 (1992). "Under this rational, at least where the lack of jurisdiction is not entirely obvious, the critical considerations are whether the complaining party had the opportunity to litigate the question of jurisdiction in the original action, and, if he did have such an opportunity, CT Page 6337 whether there are strong policy reasons for giving him a second opportunity to do so.'" Upjohn Co. v. Zoning Board ofAppeals, supra, 224 Conn. 104 (1992), citing James Hazard, Civil Procedure (2nd Ed. 1977) § 13.16, op. cit. 695; Restatement (Second), Judgments 15 (Tent. Draft No. 5 1978). "[A] party cannot belatedly contest subject matter jurisdiction when he was fully aware of the consequences of the [decree] and had the opportunity to fully litigate the question of jurisdiction in the original action, but, by stipulation, agreed without reservation to the terms of the orders which he now challenges." Morris v. Irwin, supra.4 Conn. App. 435.
This is an appropriate case for the application of a bar to a collateral attack on subject matter jurisdiction. Not only did the defendant have the opportunity to litigate jurisdiction in the original action, he created the jurisdictional problem by requesting the court to accept and approve the agreement in the original dissolution proceedings. The lack of jurisdiction, if any, was far from obvious, and since the defendant had the opportunity to challenge it at the time, the court should not recognize any strong policy reasons to give the defendant a second opportunity to do so now. Accordingly, under the circumstances of this case, this court will not allow the defendant to make a belated and collateral. attack on the original judgment.
The party's agreement, which was incorporated into the Judgment of Dissolution, concerning the defendant's obligation to pay one half of Kirsten's college tuition, is valid. Since the defendant has willfully failed to comply with the Court's order, the defendant is in contempt of court. Therefore, the plaintiff's motion for contempt is granted. Defendant is ordered to pay $4,367.90 in accordance with plaintiff's affidavit dated March 24, 1995. Further, attorneys' fees of $500 are awarded. Compliance date for both orders is August 15, 1995.
SO ORDERED, Thelma A. Santos, Judge